UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEIRDRE CARROLL, ) | |
| ) | 13-cv-9307 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| YMCA OF METRO CHICAGO, LLC, and ) | |
| DAVID RODRIGUEZ, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Deirdre Carroll worked at a Chicago-area YMCA from January 2010 to December 2012. After the YMCA fired her, Carroll sued the YMCA and her supervisor David Rodriguez for employment discrimination and various intentional torts. The YMCA and Rodriguez move to dismiss Carroll's complaint on multiple grounds. The court grants in part and denies in part the motion [27].

**BACKGROUND**

Carroll's complaint alleges a pattern of sexual and ethnic harassment and discrimination during her employment with the YMCA. In January 2010, Carroll began working as a member-relations director at the Lattof branch of the YMCA in Des Plaines, Illinois. Dkt. # 24 at 2–4. Rodriguez was the branch's executive director. Carroll alleges that shortly after she started work, Rodriquez began making inappropriate comments to her and touching her inappropriately. For instance, Rodriguez allegedly told Carroll that he really liked her and that he found her very attractive. *Id.* at 4. Carroll relates that while she was in Rodriguez's office, Rodriguez would put his arm around her shoulders, touch her arms, hold her hands, and rub her legs. *Id.* at 4–5.

1

Rodriguez also allegedly forced Carroll to remain in his office for hours at a time. Carroll states that Rodriguez would sometimes stare at her for thirty minutes without speaking as he tapped his pencil on his desk. *Id.* at 4. Carroll alleges that she repeatedly told Rodriguez not to touch her but that Rodriguez persisted in touching her against her wishes. At one point, Rodriguez allegedly stood in the doorway of his office to prevent Carroll from exiting. *Id.*

Rodriguez and Carroll attended business meetings together away from the YMCA facility, and Carroll alleges that Rodriguez insisted that Carroll ride in his car. *Id.* at 5–6. According to Carroll, Rodriguez repeatedly touched and rubbed Carroll's arm in his car. After one business meeting, Rodriguez allegedly drove Carroll to a casino against her wishes, which made Carroll nervous and afraid.

Carroll also details how Rodriguez treated her differently than male employees. Under Rodriguez's supervision, Carroll allegedly worked thirteen-hour days, seven days a week, when her male colleagues worked a 40 hour, 5 days a week schedule. *Id.* at 7. Carroll also alleges that Rodriguez imposed fundraising goals on her that were much greater than those of her male colleagues. *Id.* at 6. During director meetings, Rodriguez allegedly made comments such as "the boys on my team understand me" and "women are high drama." *Id.* at 8.

In November 2010, Carroll met with a human resources manager for the metro YMCA to discuss the situation at work. *Id.* at 10. Three months later, Carroll e-mailed metro YMCA's human relations vice president to describe Rodriguez's harassment. Throughout 2011, Carroll contacted another senior YMCA employee to complain about Rodriguez. Carroll alleges that, in December 2011, she called metro YMCA's president to quit but that the YMCA persuaded her to continue working. *Id.* Metro YMCA allegedly took no action in response to Carroll's repeated complaints. *Id.* at 11.

Early in 2012, Rodriguez allegedly began making pejorative comments about the Irish to Carroll, who was born in Ireland. *Id.* at 2, 6. She relates that Rodriguez made comments such as: "Irish people are not very smart; since you are Irish, you are not very smart, either." *Id.* at 6.

Carroll states that, in March, Rodriguez instructed her to run her hand around the rim of the toilets in the women's room, telling her to do so "because you are a girl." *Id.* at 9. Rodriguez also allegedly stripped Carroll of one her primary job duties in front of other senior employees. In May, Rodriguez gave Carroll a negative performance review.

The defendants do not contest that in May 2012 Carroll took a medical leave of absence for what Carroll alleges was a diagnosis of post-traumatic stress disorder. When Carroll returned to work from medical leave, she was still required to work seven days a week. Dkt. # 26 at 18. Carroll maintains that no male employee had a similar work schedule. Dkt. # 24 at 11. When Rodriguez placed Carroll on a performance enhancement plan, dkt. # 26 at 18, he allegedly told other employees that Carroll needed to be fired, dkt. # 24 at 11.

On October 5, 2012, Carroll complained of discrimination to the Illinois Department of Human Rights and the United States Equal Employment Opportunity Commission, both of which issued Carroll right-to-sue notices. Dkt. # 24-1 at 10–11. Rodriguez continued to file disciplinary reports against Carroll at work. Dkt. # 24 at 12. On December 11, 2012, Rodriguez fired Carroll. On December 30, 2013, Carroll sued the YMCA and Rodriguez in federal court, alleging numerous claims of employment discrimination under federal and state law and alleging various intentional tort claims.

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the

3

[plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**DISCUSSION**

The defendants move to dismiss the entire complaint on the ground that it is not "simple, concise, and direct," in violation of Rule 8(d)(1). Other than an undeveloped argument that Carroll's claims are "duplicative and improper," dkt. # 29 at 3, nothing supports the defendants' position. Carroll presents her various claims in a detailed twenty-six count complaint. Even if any portion of the complaint were extraneous, "the presence of extraneous matter does not warrant dismissal." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820–21 (7th Cir. 2001). The court is satisfied that Carroll's complaint satisfies the pleading requirements of Rule 8. The defendants move, in the alternative, to dismiss some of Carroll's employment discrimination claims and all her intentional tort claims.

The Employment Discrimination Claims

Carroll brings her disability discrimination claims under the Americans with Disabilities Act of 1990 (ADA) and the Illinois Human Rights Act (IHRA). Both laws require an aggrieved employee to present her complaint to the relevant agency, the EEOC or the Illinois Department of Human Rights, before filing suit in court. 42 U.S.C. § 12117 (incorporating the procedures of § 2000e-5); 775 Ill. Comp. Stat. 5 / 7A. As a general rule, a plaintiff cannot bring claims in a lawsuit that she did not present to the relevant agency. *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). A plaintiff "need not allege in an [administrative] charge each and every fact that

4

combines to form the basis of each claim in her complaint," but plaintiffs may only litigate in court those claims that were either actually presented to the administrative agency or are "like or reasonably related to the allegations of the administrative charge and growing out of such allegations." *Id.* at 691–92 (internal alteration marks omitted). The standard is a "liberal one," and courts examine whether "there is a reasonable relationship between the allegations in the charge and those in the complaint." *Id.*

Four of Carroll's claims concern disability discrimination. Counts 13 and 14 allege that the YMCA violated the ADA and the IHRA by denying her reasonable accommodations for her post-traumatic stress disorder and attention-deficit hyperactivity disorder and by treating her worse than non-disabled employees. Dkt. # 24 at 21–22. Counts 15 and 16 allege that the YMCA violated the two laws by willfully maintaining a hostile work environment. *Id.* at 22–23. The defendants move to dismiss these latter two counts because Carroll did not properly present them to the agencies.

Carroll filed two charges of discrimination with the Illinois Department of Human Rights and the EEOC. Her first charge, signed October 5, 2012, did not allege disability as a cause of discrimination. Dkt. # 24-1 at 2. In her second charge, dated March 18, 2013, Carroll checked the box indicating that "disability" was a cause of discrimination, and her accompanying statement includes several disability-related claims. *Id.* at 12, 19–23. It is true that Carroll's statement did not include a separate section presenting a claim of disability discrimination under a hostile work environment theory. But the relevant inquiry is not how a plaintiff labeled the various sections in her charge. The pertinent questions are whether "there is a *reasonable relationship* between the allegations in the charge and those in the complaint" and whether the claim in the complaint could reasonably be expected to be discovered in the course of the

5

[agency's] investigation." *Teal*, 559 F.3d at 692 (emphasis added). A close review of Carroll's charge and complaint confirms a strong relationship between the allegations in each document.

The defendants correctly note that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999). But they do not state how this legal proposition advances their argument. Counts 15 and 16, at issue in the defendants' motion to dismiss, do not present failure to accommodate claims. They present disability discrimination claims under a hostile environment theory. The factual allegations supporting these claims are almost identical to the allegations in Carroll's agency charge. For instance, Carroll supports count 15 by alleging that "YMCA Metro, by Rodriguez, maintained a hostile environment by ridiculing her . . . ." Dkt. # 24 at 22. Carroll's charge, similarly, alleged that she "was subjected to . . . hostile and discriminatory actions." Dkt. # 24-1 at 19. The claims at issue (disability discrimination under a hostile environment theory) certainly could "reasonably [have been] expected to be discovered in the course of the EEOC's investigation." *Teal*, 559 F.3d at 692. The court denies the defendants' motion as to counts 15 and 16.[1]

The Intentional Tort Claims

*1. Illinois Workers Compensation Act*

The YMCA and Rodriguez argue that Carroll's intentional tort claims fail because the Illinois Workers Compensation Act (IWCA) bars Carroll from bringing common law claims against her employer. State workers' compensation laws generally shield employers from negligence claims by providing the exclusive remedy to employees injured on the job. *See* 1

---

[1] The defendants move to dismiss count 8 on similar grounds but do so without argument. The court denies the defendants' motion as to count 8 as well.

6

Modern Workers Compensation § 102:1 (2014). Although Illinois law, like that of other states, in theory permits employees to sue their employers for intentional torts, the Illinois Supreme Court has interpreted this doctrine narrowly, such that many intentional tort claims are in fact barred by the IWCA.

In Illinois, the workers' compensation law bars an employee from suing an employer for a co-employee's intentional torts when the employer "did not *direct or expressly authorize* the co-employee to commit" the intentional tort. *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990) (emphasis added). Importantly, in order for an employee to proceed on a common law claim against an employer, "the employer or its alter ago" must have "intentionally inflict[ed] . . . [or] commanded or expressly authorized" the employee's injuries. *Id.* Plaintiffs intentional tort claims are barred if they do not allege that the employer "committed, or expressly authorized its agent to commit, an intentional tort." *Id.* at 1227.

Carroll contends that the YMCA is liable for Rodriguez's alleged conduct because she alleged that he was acting within the scope of his employment. But "an allegation that [the tortfeasor] was acting within the scope of his authority is not equivalent to an allegation that [the employer] expressly authorized [the tortfeasor] to commit the specific acts in question." *Meerbrey*, 564 N.E.2d at 1227. Carroll further contends that the YMCA is liable because it "authorized" Rodriguez's conduct in that Carroll alleges that she reported Rodriguez's actions and that the YMCA did nothing. Carroll relies on an opinion from this district in support of her argument that an employer's acquiescence in an employee's tortious conducts is tantamount to express authorization. That opinion, *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991 (N.D. Ill. 2013), states that an employer's "knowing ratification of . . the injurious acts of plaintiffs' co-workers, would make the plaintiffs' injur[ies] . . . foreseeable from the employer's

7

standpoint." *Id.* at 1003. *Volling*, in turn, supports its contention based on some courts' reading of *Meerbrey*. This court chooses to follow those courts that have recognized that allegations that an employer simply failed to act are insufficient under *Meerbrey*. *Temores v. Cowen*, 289 F. Supp. 2d 996, 1007 (N.D. Ill. 2003) (Kennelly, J.). (under Illinois law, "a claim that management ignored evidence that the conduct was taking place is not sufficient"); *see Grant v. Coken Co., Inc.*, No. 01 C 6400, 2005 WL 300388, *4 (N.D. Ill. Feb. 1, 2005) (Manning, J.); (the theory of "knowledge coupled with lack of follow-up action" "does not appear to be correct"). *Meerbrey* forecloses Carroll's argument. *See Todd v. Societe BIC, S.A.*, 9 F.3d 1216, 1222 (7th Cir. 1993) (Flaum, J., concurring) ("federalism requires [courts] to enforce the substantive law of the appropriate state").

In this case, the defendants argue that the IWCA, as interpreted in *Meerbrey*, bars Carroll's intentional tort claims against the YMCA. The court agrees. Because Carroll did not allege that the YMCA intentionally inflicted, commanded, or expressly authorized her injuries, *see Meerbrey*, 564 N.E.2d at 1226, the court grants the defendants' motion as to the intentional tort claims against the YMCA, counts 18, 20, 22, 24, and 26.

*2. Illinois Human Rights Act*

Carroll's remaining intentional tort claims against Rodriguez, the defendants argue, are barred by another state statute, the Illinois Human Rights Act (IHRA). Under the act, no Illinois court "shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in [the] Act." 775 Ill. Comp. Stat. 5 / 8-111(C). The Illinois Supreme Court has explained that this provision denies jurisdiction to Illinois courts to hear claims "seeking redress for a 'civil rights violation' within the meaning of the statute." *Geise v. Phoenix Co. of Chi., Inc.*, 639

N.E.2d 1273, 1276 (Ill. 1994). The IHRA classifies the act of "engag[ing] in sexual harassment" as a civil rights violation. 5 / 1-202(D). In *Geise*, the state supreme court held that causes of action that are tantamount to sexual harassment claims or that "depend on the prohibitions against sexual harassment for their viability" are barred by the IHRA. *Geise*, 639 N.E.2d at 1277. In order to determine whether a claim effectively is one for a "civil rights violation," courts must inquire "whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997).

The defendants contend that the IHRA bars Carroll's intentional tort claims for assault, battery, false imprisonment, and intentional infliction of emotional distress (IIED) because these claims are "inextricably linked" to Carroll's civil rights claims. In *Geise*, the Illinois Supreme Court determined that the IHRA barred a plaintiff's claims for negligent hiring and negligent retention of an employee because those "claims are grounded on principles of sexual harassment." *Geise*, 639 N.E.2d at 1277. The Illinois Supreme Court, however, has "[c]learly" held that "ordinary common law tort claims" are independent causes of action. *Maksimovic*, 687 N.E.2d at 23; *see Temores v. Cowen*, 289 F. Supp. 2d 996, 1006 (N.D. Ill. 2003) (Kennelly, J.) (noting that the "Illinois Supreme Court has specifically and unequivocally" decided this issue). The court expressly decided that the IHRA does not bar "claims of assault, battery and false imprisonment." *Id.* As the state high court said: "These are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment under the [IHRA]." *Id.* The common law of tort provides "a basis for imposing liability . . . independent of the

[IHRA]." *Id.* The court accordingly denies the defendants' motion on this ground.[2]

*3. Failure to State a Claim for Intentional Infliction of Emotional Distress and Other Torts*

The YMCA and Rodriguez argue that Carroll's IIED claim, even if not barred by state law, fails as a matter of law. Under Illinois law, an IIED claim requires: 1) "truly extreme and outrageous" conduct; 2) either the tortfeasor's intent to inflict severe emotional distress or knowledge of a high probability that conduct will cause severe emotional distress; and 3) "severe emotional distress" in the victim. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) (internal emphasis omitted). In order to satisfy what the Illinois Supreme Court refers to as the "outrageous requirement," a plaintiff must show that a defendant's conduct was "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* at 83 (internal quotation marks omitted). Outrageous conduct exists "where recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (internal quotation marks omitted).

The defendants contend that Carroll fails to meet the "outrageousness requirement." Because the numerous Illinois cases raising IIED claims provide no bright-line rule about what satisfies the outrageousness element, it is helpful to have some reference points.

---

[2] There is notable disagreement in the case law about whether, under *Maksimovic*, the IHRA bars a claim for common law IIED. To highlight only two of the cases constituting this disagreement, compare *Temores v. Cowen*, 289 F. Supp. 2d 996, 1007 (N.D. Ill. 2003) (Kennelly, J.) (holding that IIED "ha[s] been recognized by the Illinois courts as [an] independent actio[n] since long before the adoption of the IHRA"), with *Naylor v. Streamwood Behavioral Health Sys.*, No. 11 C 50375, 2012 WL 5499441, *5 (N.D. Ill. Nov. 13, 2012) (IHRA barred IIED claim). The Seventh Circuit has noted that the "application of [*Maksmovic*]" with regard to IIED claims "has led to sometimes inconsistent results." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 603 n.4 (7th Cir. 2006). Because the court dismisses the IIED claim against Rodriguez on other grounds, it is not necessary to reach this issue.

The Illinois Supreme Court has offered the following examples of conduct satisfying the outrageousness element: a decade-long pattern of domestic abuse involving frequent physical injury, *Feltmeier*, 798 N.E.2d at 83; a police officer's refusal to break down a door for a sexual assault victim while an intruder raped the victim's daughter on the other side, *Doe*, 641 N.E.2d at 507–08; on-air comments by radio disc-jockeys that a caller's wife and child, sufferers of "Elephant Man disease," had abnormally large head and deformed heads, *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211–13 (Ill. 1992). Although, as noted, there is no bright-line rule about what satisfies the outrageousness requirement, the court does not believe that Rodriguez's alleged conduct constitutes IIED. In the employment context, even "a continuous series of intentionally discriminatory acts" does not necessarily constitute IIED in Illinois. *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 568 (7th Cir. 1997). Conduct may be blameworthy, illegal, "highly inappropriate," and even "reprehensible" without qualifying as IIED. *Id.* at 568, 569. Here, as in *Van Stan*, the court does not "condone [discriminatory] conduct," *Van Stan*, 125 F.3d. at 569, but Carroll's allegations fail to state a claim for IIED.

The defendants also contend that Carroll fails to state a claim against Rodriguez for false imprisonment, assault, and battery. The court has closely examined the allegations in Carroll's complaint and finds that Carroll has sufficiently pleaded the required elements of these claims.

**CONCLUSION**

The court grants the defendants' motion [27] in part and denies the motion in part. The court dismisses the intentional tort claims against the YMCA (counts 18, 20, 22, 24, and 26) and the IIED claim against Rodriguez (count 17). Carroll may proceed on her employment discrimination claims and her claims against Rodriguez for false imprisonment, assault, and

battery.  The court also strikes as moot the defendants' prior motion [18] to dismiss and schedules a status hearing for January 23, 2015, at 9:00 a.m.

DATED: January 9, 2015

_____
SHARON JOHNSON COLEMAN
United States District Judge